Chris prysok
231-420-6168
chrisprysok@gmail.com
5058 main st. Millersburg
MI, 49759

**FILED - MQ**
January 29, 2024 10:52 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ____slk____ / _DL 1-30-24_

**2:24-cv-15**
Jane M. Beckering - U.S. District Judge

**CHRISTOPHER PRYSOK,** *Plaintiff,*

v.

**NATIONAL PARK SERVICE,** *Defendant.*

Civil Action

DEMAND FOR JURY TRIAL

**UNITED STATES OF AMERICA UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN**

**COMPLAINT**

Christopher Prysok, one of the People as contemplated in the preamble to the Constitution of the United States of America in this court of record herein referred to as the Plaintiff, alleges as follows:

**JURISDICTION AND VENUE**

1. The United States enforces the provisions of the 14th amendment, 18 USC 1983, 36 CFR Section 1.6 (g), and Section 5.3.
2. Jurisdiction stems from 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 3614(a).
3. Venue resides in the Western District of Michigan due to the events and defendants' location, Additionally, this Court has jurisdiction over this case under 28 U.S.C. § 1332, as it involves a matter of federal law and the parties are diverse in

citizenship, with the Plaintiff being a resident of Michigan and the Defendant being an agency of the United States government.

**FACTUAL ALLEGATIONS**

4. In 2019, Mr. Prysok possessed a Commercial Use Authorization (C.U.A.) Permit to operate kayaking tours at Apostle Islands National Lakeshore. He also Had one simultaneously in Pictured Rocks National Lake Shore.

5. On July 27th, 2019, Terri Gage, Chief Ranger at Apostle Islands National Lakeshore (APIS), suspended and subsequently revoked this permit, on one form as detailed in Exhibit B.
6. The reasons for revocation are unverified.
7. No citations were issued against Mr. Prysok, thus no violations existed, making APIS's actions unauthorized and in violation of various codes.
8. Terri Gage's claim of discretionary power for immediate revocation is overreaching, as noted in Exhibit B.
9. No revocation reasons listed transitioned into formal citations for the district court to rule on.
10. The absence of due process jeopardizes Mr. Prysok's livelihood, supported by the ruling in *Withrow v. Larkin*. Also Exhibit A.
11. Administrative decisions need robust evidence, without which they risk being arbitrary, as stipulated in various cases including *Overton Park* and *Motor Vehicle Manufacturers*.
12. The National Park Service's actions, if arbitrary or capricious, can be nullified under the Administrative Procedure Act (APA), as highlighted in 5 U.S.C. § 706(2)(A). Furthermore, in alignment with Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971), this case contends that the actions taken by the National Park Service may be deemed arbitrary and capricious, failing to meet the standard of reasoned decision-making required under the APA.
13. Revoking Apostle Islands Adventure LLC's CUA without court intervention denies due process, echoing sentiments from *Bell v. Burson*.
14. Unverified claims by APIS constitute defamation against Mr. Prysok, which also extended to PIRO.
15. n 2019, Mr. Prysok's kayak permit was revoked by APIS without the necessary legal backing. This action severely impacted his business, Apostle Islands Adventures LLC, and disregarded due process, when destroying a persons livelihood due process is required and is possibly a 14th amendment violation. Exhibit B.

16. **APIS's Decision Without Due Process**: APIS's revocation lacked the critical step of district court approval, a standard procedure for such actions. Furthermore, the Central Violations Bureau has no record of the alleged violations cited by APIS.

17. The case of Saucier v. Katz, 533 U.S. 194 (2001), primarily deals with a different issue: the "qualified immunity" doctrine as it relates to law enforcement officers. This doctrine protects government officials from liability for civil damages, provided their actions do not violate clearly established statutory or constitutional rights.

18. In support of this claim, reference is made to Monell v. Department of Social Services, 436 U.S. 658 (1978), which establishes that a local government can be liable under 42 U.S.C. § 1983 when the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

In Saucier, the Court laid out a two-step sequence for determining whether an officer is entitled to qualified immunity:

1. Was the alleged conduct a violation of a constitutional right?
2. Was the right clearly established at the time of the violation?

**The Right to Due Process**: The Fifth Amendment to the U.S. Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. The revocation of your Commercial Use Authorization (C.U.A.) Permit by the National Park Service (NPS) directly impacts your property interest in conducting business, thus invoking the need for due process protections.

1. **Property Interest in the Permit**: Based on *Board of Regents v. Roth*, your C.U.A. Permit constitutes a property interest. The permit allows you to conduct business, and its revocation affects your livelihood. Therefore, the deprivation of this permit should be subject to due process requirements.

2. **Lack of Adequate Process**: The revocation of your permit without a proper hearing or a chance to respond to the allegations against you constitutes a violation of procedural due process. This is consistent with the principles established in *Cleveland Board of Education v. Loudermill*.

**Well-Established Due Process Rights**: The right to due process, especially in the context of property interests and livelihood, has been long established in U.S. law. The principles laid out in *Roth* and *Loudermill* have clearly established the requirement for due process in situations where a person's property interests are at stake.

1. **Expectation of Due Process in Permit Revocation:** Given the existing legal precedents, it was reasonable for you to expect that the NPS would provide due process before revoking your permit. The absence of such process is not just a violation of constitutional rights, but also a failure to adhere to established legal norms.

2. **Administrative Procedures Act (APA) Requirements:** The APA further cements the expectation of due process, mandating federal agencies to follow certain procedures before taking actions that affect individuals' rights. The lack of adherence to these procedures by the NPS supports the assertion that your right to due process was clearly established and violated.

### APA Standards

**Reasoned Decision-Making:**

- **Facts from Pleading:** The permit issued to Mr Prysok was revoked by the National Park Service (NPS) without any citations or verified violations (Paragraphs 6-7).
- **APA Application:** The Administrative Procedure Act (APA) mandates that agency decisions must be founded on adequate evidence and sound reasoning. The lack of citations or substantial evidence supporting the revocation of Mr Prysok's permit could be construed as a violation of the APA's standard for reasoned decision-making, rendering the decision legally untenable.

**Transparency in Decision-Making:**

- **Facts from Pleading:** It is asserted that the reasons for the revocation of Mr Prysok's permit by the NPS are unverified and potentially arbitrary (Paragraphs 6, 8, 11).
- **APA Application:** The APA emphasizes the need for transparency in administrative actions. If the NPS failed to provide clear, verifiable reasons for the permit revocation, this action could be considered a breach of the APA's transparency requirement, questioning the legality of the decision.

**Due Process in Administrative Actions:**

- **Facts from Pleading:** The permit was revoked without providing Mr Prysok a formal hearing or an opportunity to respond to the allegations in District court in the CFR. (Paragraphs 5, 9, 10, 16).
- **APA Application:** The APA stipulates that individuals or entities affected by an agency decision are entitled to due process, which typically includes notice and a chance for a

hearing. The absence of such a process in Mr Prysok's case might constitute a violation of the APA's due process requirements.

**Arbitrary and Capricious Standard:**

- **Facts from Pleading:** The decision-making by the NPS in revoking Mr Prysok's permit is implied to be arbitrary and lacking in substantial evidence (Paragraphs 6, 11, 12).
- **APA Application:** Under the APA, agency actions must not be arbitrary or capricious. If the decision to revoke Mr Prysok's permit was made without proper evidence or justification, it could be argued that this action violates the APA's arbitrary and capricious standard.

3. **Public Knowledge and Training:** Given the training and knowledge expected of NPS officials and park rangers, it is reasonable to assume that they were, or should have been, aware of the due process requirements in situations like that of Mr. Prysok.

4. The failure to provide a hearing or an opportunity to respond to the allegations in District Court as The CFR code defines in the revocation policy signed by APIS employees before revoking the permit goes against established legal precedents and the fundamental principles of procedural due process as outlined in the Fifth Amendment. Therefore, the actions of the NPS officials in this case should not be covered by qualified immunity, as they violated your well-established constitutional rights. The fact that the suspension and the revocation appeared on the same document proving there was no investigation is also evident of due process violations. Exhibit A

19. **PIRO's Dependent Decision:** In 2021, PIRO denied Mr. Prysok's appeal, largely referencing APIS's unsubstantiated claims. David Horne's reliance on these unverified violations raises concerns about the integrity of the review process. The source of PIRO's information regarding the purported violations remains questionable, given their absence from official databases.

20. **Questioning APA Adherence:** The Administrative Procedure Act (APA) mandates federal agencies to ensure reasoned and transparent decision-making. The manner in which APIS acted suggests a potential deviation from these guidelines.

## FAVORTISIM IN VIOLATION OF TILE V

21. **2024 Application process**

    During the 2024 CUA application process some outfitters were given chances to update their application packet while others namely MR. Prysok was not afforded the opportunity to amend his CUA application packet, and then was subsequently denied permit for the 2024-25 Kayak seasons for the exact reason that others were given favoritism to correct. Title 5 of the code of conduct for Government employees forbids it.  Exhibit H

22. **Paddling Michigan Outfitter:** Following an incident where 30 clients were abandoned in the water by their guides, the outfitter continued its operations without interruption. Despite holding six violations, as confirmed in an email from Chief Ranger Joseph Hughes to Superintendent David Horne, there has been no recorded investigation, suspension, or revocation of their permit. nsert after point 22: "The unequal treatment alleged herein may also violate the Equal Protection Clause as interpreted by the U.S. Supreme Court in City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985), which underscores the requirement for governmental decisions to not be based on arbitrary or irrational classifications.

23. **Trek and Trail (APIS):** Within a span of three weeks, this outfitter was associated with two significant incidents: a rescue operation by the National Park Service and another by the Coast Guard. Yet, they faced no interruptions in their operations or any citations for their actions. Mr Prysok has only had unsubstantiated allegations at APIS never any actual interaction with NPS enforcement, There is not a single signature to verify any of the claims in the revocation outside of Terri Gage. No citation or due process of any kind. Yet Trek and Trail has a fine reputation.

24. **Rustic Mukwaden:** In the summer of 2023, this outfitter had an NPS boat rescue. Despite the severity of the incident, no action in the form of a suspension, citation, or operational interruption was taken against them. This is a violation of the C.U.A. Involves public safety and is deemed irrelevant, while an unnamed customer who may have waited 45 minutes for a tour is grounds to destroy Mr Prysok and his businesses for 4 years running in the APIS jurisdiction, and others outside.

25. **Travis Barningham (Former CUA holder):** Having lost his permit in 2018 due to multiple violations, Travis returned in 2021 with a new CUA. Notably, his application overlooked mentioning serious felony charges against him. He lied on his permit application hiding child sex crimes and was permitted. In 2022,

he was observed working as a guide in 2023 at Meyers beach, leading minors off-shore unsupervised, a clear potential safety risk. Despite this, APIS employees allowed Travis to operate. Notwithstanding though his 2022 CUA permit was revoked due to his conviction. APIS employees allowed transfer of a non transferrable permit to his sister in law, and allowed them to operate without a valid web site. On the web site Mr. Barningham's address was listed and his name was on receipts after his revocation. APIS employees are well aware. Emails from concerned citizens prove were they required to submit. Yet Mr. Prysok is not allowed to work at Apis because of alleged unsubstantiated customer service claims at a known cell service black zone. Exhibit L and L1-4

26. In contrast to the above leniencies, Chris Prysok's operations were hindered for communication issues in a known cell dead zone at Meyers beach. The consistent and apparently undue favor shown to other outfitters, juxtaposed against the stringent actions against Mr. Prysok, underscore the allegations of favoritism, potentially violating principles intended to ensure fairness and impartiality in the dealings of federal employees. Mr. Prysok has been unable to work yet all of these aforementioned people are still working at APIS despite the issues being serious public safety concern while the allegations that keep Mr prysok from working are sub petty and did not warrant citation, likely due to lack of evidence, as they are unsubstantiated hearsay. Exhibit E,G

27. **Broader Implications:** The series of events, including the potential existence of a prejudicial file, the bypassing of due process, and breaches of the CUA agreement, indicate significant administrative challenges that need addressing. Exhibit K

## CAUSES OF ACTION

Violation of Administrative Procedures: Unlawful revocation of the APIS permit and denial of PIRO appeal per APA, 5 U.S.C. § 551 et seq.

Civil Rights Violations: Breach of due process under 42 U.S.C. § 1983. In light of Mathews v. Eldridge, there was an egregious lack of due process.

Conspiracy to Deprive Rights: Indications of an organized effort

against Mr. Prysok's business.

Violation of Federal Regulations and Breach of Contract: By specific employees, leading to unauthorized permit actions.

Conspiracy to Violate Civil Rights: Collaboration between APIS and PIRO against Mr. Prysok's venture, violating Title 18 U.S.C. § 241.

Unequal Application of Regulations and Favoritism: Biased actions favoring certain businesses.

Equal Protection Violation and Abuse of Power: Breach of the Fourteenth Amendment due to arbitrary regulation application and discernible favoritism.
Pursuant to Federal Rule of Civil Procedure 38, a trial by jury is demanded for all triable issues.

In Summer of 2023 Mr Prysok had entered into a deal on a citation that would result in resolution of the matter resulting in a citation that would have no conflict with Mr. Prysok obtaining an APIS CUA permit for the 2024-2025 season. Shortly after the United States Clerk received my signed copy of the deal sent from the US attorney and cashed my check. APIS sent a denial of CUA permit letter citing the Citation that was agreed to by all parties that would not conflict with the application process. This is more evidence of a pattern of behavior by the APIS and PIRO engaging in lawlessness and deliberate violations of each of the participants oath of office and is a form of denial of due process rampant in the region. Exhibit D

**PRAYER FOR RELIEF**
The plaintiff requests the following:

1. **Declaratory Relief:** Reinstate revoked permits for the duration lost without reapplication.
2. **Injunctive Relief:** Prevent further prejudiced actions by the defendants.
3. **Compensatory Damages:** Award for financial losses sustained, estimated at 3.8 million dollars (APIS).
4. **Punitive Damages:** Award 272,000 for each right violation count or deprived rights per instance.
5. **Attorneys' Fees and Costs:** Compensation for the incurred legal costs.
6. **Any Other Relief:** Any other just and proper remedies.
7. See Exhibit C,D.

DATED: January 21, 2024

By: _____

Christopher Prysok, In Propria Persona
01/21/2024

FROM: Prison
5050 Main St.
Millersburg MI 49759

TO: Federal Court
Atten Clerk

202 W. Washington St
Marquette MI,
49855








