UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER PRYSOK,                          Case No. 2:24-cv-15

      Plaintiff,                            Hon. Jane M. Beckering
                                             U.S. District Court Judge
v.
                                             Hon. Maarten Vermaat
NATIONAL PARK SERVICE,                       U.S. Magistrate Judge

      Defendant.
_____/

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR
<u>ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

Pro se Plaintiff Christopher Prysok is the owner of several businesses that provided commercial kayaking services in the National Park System.  After the National Park Service (the "Park Service") revoked his business' permits to operate in Apostle Islands National Lakeshore ("Apostle Islands") and Pictured Rocks National Lakeshore ("Pictured Rocks"), he filed this lawsuit.  In his Complaint, Plaintiff alleges that the Park Service's actions were arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act ("APA").  He further alleges that the Park Service breached his right to due process and equal protection, engaged in a conspiracy to deprive him of these rights, breached contracts, and violated federal regulations. Plaintiff's claims against the Park Service face numerous jurisdictional and statutory hurdles and should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

All of Plaintiff's claims should be dismissed because Plaintiff lacks Article III standing and is not the real party in interest.  His claims all derive from the Park Service's revocation and denial of permits to limited liability corporations.  As such, the claims belong to the corporations, not to Plaintiff personally.

In addition, each of Plaintiff's individual causes of action are subject to dismissal for various reasons.  First, Plaintiff's APA claims fail because the United States has not waived its sovereign immunity for such claims.  The APA's limited waiver of sovereign immunity does not extend to the Park Service's actions here, which are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Second, the Park Service cannot be sued for due process and equal protection claims under 42 U.S.C. § 1983 and the Fourteenth Amendment because it is a federal agency, and § 1983 and the Fourteenth Amendment only apply to state actors.  Even if the Court considers Plaintiff's due process and equal protection claims under the Fifth Amendment, which applies to

federal actors, such claims cannot be brought against the Park Service because the United States has not waived sovereign immunity in this context.  Such claims rooted in the U.S. Constitution may only be brought as individual-capacity claims to the extent permitted under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).  Third, Plaintiff fails to state a conspiracy claim because 18 U.S.C. § 241 is a criminal statute that does not provide for a private civil cause of action, and the intracorporate conspiracy doctrine bars conspiracy claims when all defendants are member of the same collective entity.  Fourth, Plaintiff's breach of contract and regulatory claims must be dismissed for the same two reasons: (1) Plaintiff has failed to identify an applicable waiver of sovereign immunity for these claims, and (2) Plaintiff has failed to allege facts sufficient to state a claim for which relief may be granted.

## BACKGROUND

### I.        Statutory and Regulatory Background

The Park Service administers the National Park System under a mandate from Congress to "conserve the scenery, natural and historic objects, and wild life" in national parks "in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  54 U.S.C. § 100101(a).  In furtherance of this goal, Congress enacted the National Park Service Concessions Management Improvement Act of 1998, 54 U.S.C. §§ 101911-101926 (the "1998 Act"), and found that commercial visitor services "should be provided only under carefully controlled safeguards against unregulated and indiscriminate use[.]"  54 U.S.C. § 101912(a).

The Secretary of the Interior, acting through the Director of the Park Service, has the authority to "regulate the use of the National Park System by means and measures that conform to [its] fundamental purpose[.]"  54 U.S.C. § 100101(a).  Pursuant to these congressional mandates, the Park Service issued the regulations found at 36 C.F.R. § 1 *et seq*.  These regulations generally

prohibit any person from using lands or waters within the National Park System for private commercial gain unless they obtain permission from the Park Service.  *See* 36 C.F.R. § 5.3.  One means of obtaining permission for commercial use of park areas is through a commercial use authorization ("CUA").  54 U.S.C. § 101925(a) ("[T]he Secretary, on request, may authorize a private person, corporation, or other entity to provide services to visitors to System units through a commercial use authorization."); 36 C.F.R. § 1.6(a).

The superintendent of each park area within the National Park System has been delegated the authority to issue permits, including CUAs, for commercial activities.  Specifically:

> [T]he superintendent may issue a permit to authorize an otherwise prohibited or restricted activity or impose a public use limit. The activity authorized by a permit shall be consistent with applicable legislation, Federal regulations and administrative policies, and based upon a determination that public health and safety, environmental or scenic values, natural or cultural resources, scientific research, implementation of management responsibilities, proper allocation and use of facilities, or the avoidance of conflict among visitor use activities will not be adversely impacted.

36 C.F.R. § 1.6(a).  The superintendent must deny an application for a CUA if he or she determines that one or more of the factors set forth above "would be adversely impacted."  36 C.F.R. § 1.6(d).  If a CUA is issued, the superintendent is required to include "terms and conditions that the superintendent deems necessary to protect park resources or public safety," and if a CUA holder violates a term or condition of the CUA, the superintendent may suspend or revoke the CUA.  36 C.F.R. § 1.6(e), (h).

## II.    Plaintiff's Commercial Operations within the National Park System

Plaintiff owns Apostle Islands Adventures, LLC ("AI Adventures"), and Pictured Rocks Adventure, LLC ("PR Adventure"), which provided kayaking tours at Apostle Islands and Pictured Rocks, respectively.  (Compl., ECF No. 1, PageID.2, ¶¶ 4, 13; Declaration of Tracy R. Simmons, dated June 4, 2024 (hereinafter "Simmons Declaration") (attached hereto as Exhibit A), ¶¶ 4-5.)

3

In accordance with applicable regulations, each business operated pursuant to a CUA issued by the Park Service.  (Simmons Decl. ¶¶ 4-5, Exs. 1-2.)  Plaintiff is listed as a contact person on each CUA, but the CUA was issued to the corporations, not to Plaintiff personally.  (*Id*.)

Pursuant to Apostle Islands' CUA Suspension, Restriction, Revocation and Application Denial Policy, the Park Service informed Plaintiff on July 27, 2019 that it was revoking AI Adventures' CUA due to its "consistent failure to adhere to CUA conditions."  (ECF No. 1-4, PageID.17-20; Simmons Decl. ¶¶ 6, 8, Exs. 3, 5.)  For example, the revocation notice informed Plaintiff that AI Adventures had violated Park Specific CUA Condition #17, which required AI Adventures' guides to possess a current first aid and CPR certification and ensure that copies of those certifications are on file with the Apostle Islands Commercial Services Manager.  (ECF No. 1-4, PageID.18-19; Simmons Decl. ¶ 8, Ex. 5.)  The notice informed Plaintiff that, in violation of this condition, AI Adventures had at least six guides who were missing certifications.  (*Id*.)  The notice also informed Plaintiff that AI Adventures violated Park Specific CUA Condition #9 by soliciting business on park lands and violated Park Specific CUA Conditions #3 and #4 by employing guides who engaged in unprofessional conduct and operating vehicles that lacked required signage.  (ECF No. 1-4, PageID.18-20; Simmons Decl. ¶ 8, Ex. 5.)  Plaintiff had the opportunity to appeal the revocation but did not do so.  (Simmons Decl. ¶ 9, Ex. 5.)

Plaintiff's other corporation, PR Adventure, continued to operate at Pictured Rocks over the next two years.  (*Id*. at ¶ 10.)  Then, after an incident that culminated in a rescue of five of PR Adventure's clients, and a subsequent investigation that found multiple CUA safety violations, the Park Service informed Plaintiff on August 4, 2021, that it was suspending PR Adventure's CUA.  (*Id*. at ¶¶ 10-11, Ex. 6.)  Plaintiff appealed the suspension.  (*Id*. at ¶ 12.)  On March 17, 2022, pursuant to Pictured Rocks' CUA Suspension, Restriction, Revocation, and Application Denial

Policy, the Park Service denied the appeal and revoked PR Adventure's CUA for violating the terms of the CUA and knowingly providing false information to a law enforcement officer, among other reasons.  (*Id*. at ¶¶ 7, 13, Exs. 4, 7.)

Plaintiff later applied for a CUA for the 2024/2025 season at Apostle Islands on behalf of a third limited liability corporation, Paddle Ride Adventures, LLC ("Paddle Ride"), which the Park Service denied.  (ECF No. 1-6, PageID.22-23; Simmons Decl. ¶¶ 14-15, Exs. 8-9.)  The Park Service cited, among other things, the following reasons for denial: the 2019 CUA revocation at Apostle Islands, the 2022 revocation at Pictured Rocks, and a 2023 citation issued in Apostle Islands for failure to display the registration number on a vessel owned by Plaintiff.  (ECF No. 1-6, PageID.22-23; Simmons Decl. ¶ 15, Ex. 9.)  Plaintiff appealed the decision in writing on January 22 and 28, 2024.  (Simmons Decl. ¶ 16.)  On March 11, 2024, the Park Service denied Plaintiff's appeal.  (*Id*. at ¶ 16, Ex. 10.)

## III.    Plaintiff's Complaint

On January 29, 2024, Plaintiff filed this lawsuit against the Park Service.  (Compl., ECF No. 1, PageID.1-35.)  The Complaint alleges that the Park Service's revocation of AI Adventures' and PR Adventure's CUAs was arbitrary, capricious, and unlawful in violation of the APA.  (*Id*. at PageID.7.)  The Complaint also includes various other causes of action, including breach of due process under 42 U.S.C. § 1983, equal protection violations in breach of the Fourteenth Amendment, conspiracy to deprive rights in violation of 18 U.S.C. § 241, breach of contract, and violations and unequal application of regulations.  (*Id*. at PageID.7-8.)  For relief, Plaintiff seeks a declaratory order reinstating the revoked permits, an injunction preventing "further prejudiced

actions" by the Park Service, compensatory damages, punitive damages,[1] and attorneys' fees and costs.  (*Id*. at PageID.8.)

## LEGAL STANDARD

A federal court must dismiss a case under Rule 12(b)(1) if it lacks subject-matter jurisdiction to adjudicate a party's claim.  Fed. R. Civ. P. 12(b)(1); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  It must presume that a cause lies outside of its jurisdiction, and the party opposing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) bears the burden to establish jurisdiction.  *Kokkonen*, 511 U.S. at 377; *see also Mattfolk v. United States*, No. 1:14-CV-693, 2014 WL 5094240, at *1 (W.D. Mich. Oct. 10, 2014).  A challenge to subject-matter jurisdiction under Rule 12(b)(1) may be a facial attack, which challenges the sufficiency of the plaintiff's factual allegations, or a factual attack, which challenges the fact of subject-matter jurisdiction.  *See Kokkonen*, 511 U.S. at 377; *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  In considering a factual attack on subject-matter jurisdiction, a court is free to weigh the evidence relating to jurisdiction and may consider affidavits and other evidence outside the pleadings.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986).

Under Rule 12(b)(6), a court should dismiss a complaint that fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a valid claim, a complaint must contain "allegations respecting all the material elements to sustain recovery under some viable

---

[1] Punitive damages are not recoverable against the federal government without congressional approval.  *Commerce Fed. Sav. Bank v. Fed. Deposit Ins. Corp.*, 872 F.2d 1240, 1248 (6th Cir. 1989).  The Complaint does not cite to any authority suggesting that Congress has approved punitive damages for the claims alleged.

legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).   A court should dismiss a claim under Rule 12(b)(6) when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While the court should accept the complaint's factual allegations as true in connection with a Rule 12(b)(6) motion, the court need not accept legal conclusions, including those that are couched as factual allegations. *Id*.  "Pro se plaintiffs are treated to less stringent standards, but 'they are not automatically entitled to take every case to trial.'" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation omitted).  "The leniency granted to pro se petitioners . . . is not boundless." *Id*. "[L]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (citation omitted.)  In general, a court is limited under Rule 12(b)(6) to consideration of matters inside the pleadings, but a court may consider "documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations," as well as "public records[,]" without converting the motion to one for summary judgment. *Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 974-75 (N.D. Ohio 2010) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) and other cases); *accord Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018).  Here, Plaintiff's Complaint challenges the revocation of his corporations' CUAs.  (Compl., ECF No.1, PageID.2, 7, ¶¶ 4-5.)  He specifically references the attached exhibits—CUAs, the Park Service's Revocation Notices, and the Park Service's policies—in his Complaint and they are part of the administrative

determinations that he challenges, so this Court may consider them in deciding the Park Service's motion to dismiss.  (*Id*. at PageID.2, 5, 7, ¶¶ 4-5, 18, 19.)

Under Rule 56, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portion of the record that demonstrates there are no genuine issues of material fact as to an essential element of the claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003).  To withstand summary judgment, the non-moving party then must produce specific facts that demonstrate a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A factual dispute is "material" if its resolution is determinative of an essential element of the non-moving party's case.  *Id*. at 248.  A court views the evidence in the light most favorable to the non-moving party.  *Sutherland*, 344 F.3d at 613.  But the non-moving party "may not rest upon its mere allegations."  *Id*. (internal quotation omitted).  "The existence of a mere scintilla of evidence in support of the non-moving party's position" is not sufficient to withstand summary judgment.  *Id*.  The non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Id*.  (Quotation omitted.)  There must be evidence upon which the fact finder could reasonably find for the non-moving party.  *Id*.

## ARGUMENT

## I.    The Court should dismiss the Complaint because Plaintiff lacks Article III standing and is not the real party in interest.

Plaintiff filed this lawsuit in his individual capacity.  All of Plaintiff's claims, however, stem from the Park Service's actions toward three corporations—the revocation of AI Adventures' and PR Adventure's CUAs, as well as the denial of Paddle Ride's CUA application.  Thus, at its

core, Plaintiff's Complaint seeks to redress injuries these corporations suffered, not injuries he suffered directly and personally.  The Sixth Circuit has held that "an action to redress injuries by a corporation cannot be maintained by a stockholder in his own name," even where the stockholder is the sole shareholder.  *Nicholson v. Ticketmaster*, 42 F. App'x 696, 697 (6th Cir. 2002) (unpublished) (citing *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 602-603 (6th Cir. 1988).  This is often referred to by courts as the shareholder standing doctrine.  *Franchise Tax Bd. Of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).

The Sixth Circuit has addressed shareholder standing in two different ways.  In one line of cases, the Sixth Circuit has held that the doctrine implicates a plaintiff's Article III standing to sue. *Old Blast, Inc. v. Operating Engineers Local 324 Pension Fund*, 663 F. App'x 454, 457 (6th Cir. 2016); *Gaff v. FDIC*, 814 F.2d 311, 315 (6th Cir. 1987).[2]  In another line of cases, the Sixth Circuit has analyzed the doctrine in the context of Federal Rule of Civil Procedure 17's real party in interest requirement.  *White v. JPMorgan Chase Bank, NA*, 521 F. App'x 425, 428 (6th Cir. 2013); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532-33 (6th Cir. 2002).  Analyzed under either framework, Plaintiff's claims fail for lack of standing.

---

[2] District courts within the Sixth Circuit have also dismissed actions brought by corporation owners or shareholders for injuries to the corporation based on a lack of prudential standing.  *See, e.g., Olita v. McCalla*, No. 2:21-cv-2763, 2022 WL 1644627, at *5 (W.D. Tenn. May 24, 2022); *Dockery v. Szymanski*, No. 22-11507, 2023 WL 1978923, at *3-4 (E.D. Mich. Jan. 24, 2023). Prudential standing is not derived from Article III and encompasses "several judicially self-imposed limitations on the exercise of federal jurisdiction," *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 561 (6th Cir. 2010) (quotation and citation omitted)), including "the general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quotation and citation omitted).  In *Olita*, the court held that "a business's owners cannot seek to enforce the business's rights . . . '[because] [c]onduct which harms a corporation confers standing on the corporation, not its shareholders.' "  2022 WL 1644627, at *5 (citing *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

### A.    Plaintiff lacks Article III standing.

Standing is "the threshold question in every federal case," and is required to confer subject matter jurisdiction upon federal courts under Article III of the Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  A plaintiff bears the burden of establishing standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To satisfy Article III's standing requirements at the pleading stage of a case, a plaintiff must allege:

> (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).  For an injury to be particularized, it must "affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330-31 (2016) (quoting *Lujan*, 504 U.S. at 560).

In *Old Blast*, the Sixth Circuit held that even a sole shareholder of a corporation does not suffer a personal or particularized injury sufficient to establish Article III standing when his or her suit is based solely on an injury to the corporation.  663 F. App'x at 457 (citing *Gaff*, 814 F.2d at 315).  In order to have standing to sue in his or her individual capacity, a shareholder must "suffer[] an injury that is 'separate and distinct' from the corporation's injury."  *Id*.  Mere depreciation in value of the corporation or corporation's stock is not enough.  *Id*.  District courts in the Sixth Circuit have repeatedly dismissed, for lack of Article III standing, actions brought by corporation owners or shareholders for injuries to the corporation.  *See, e.g., Anders v. Cuevas*, No. 19-10989, 2019 WL 4345964, at *2 (E.D. Mich. Sept. 12, 2019) (owner of towing company lacked standing to assert retaliation claim where only his company was injured by the city's decision not to award it a contract); *Fiore v. City of Detroit*, No. 18-11565, 2018 WL 5014196, at *3 (E.D. Mich. Oct.

16, 2018) (towing company owner lacked standing where only her company suffered injury when the defendant terminated its bidding rights).

The CUAs at issue in this lawsuit were granted to AI Adventures and PR Adventure, not to Plaintiff.[3]  Therefore, the Park Service has not taken any action against Plaintiff directly. Instead, it revoked AI Adventures' and PR Adventure's CUAs.  So, any alleged injury stemming from these purportedly unlawful revocations was suffered by AI Adventures and PR Adventure. These revocations affect Plaintiff only indirectly, and thus he has suffered no harm that is "separate and distinct" from that of his corporations.  *Old Blast, Inc.*, 663 F. App'x at 457 (citing *Gaff*, 814 F.2d at 315).  The same is true for the Park Service's denial of Paddle Ride's CUA application. Because Plaintiff is suing in his individual capacity, and not on behalf of AI Adventures, PR Adventure, or Paddle Ride, he lacks Article III standing and the Court should dismiss the Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction.

**B.    Plaintiff is not the real party in interest.**

Plaintiff's claims also fail because he is not the real party in interest.  "An action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The Sixth Circuit has held that the real party in interest analysis is another way to determine whether a shareholder has a right of action.  *White*, 521 F. App'x at 428; *Zurich Ins. Co.*, 297 F.3d at 532-33.  This is a non-jurisdictional inquiry properly presented to courts under Federal Rule of Civil Procedure 12(b)(6).  Some courts have described Rule 17(a)(1)'s real-party-in-interest requirement as "essentially a codification" of the "well-established prudential-standing limitation . . . that a litigant cannot sue in federal court to enforce the rights of third parties."  *Rawoof v. Texor Petroleum Co.*,

---

[3] The CUAs list Plaintiff as a contact person but were granted solely to AI Adventures and PR Adventure.  (Simmons Decl. ¶¶ 4-5, Exs. 1-2.)

*Inc.*, 521 F.3d 750, 757 (7th Cir. 2008). This well-established limitation applies equally to shareholders and corporations—"[a]ny injury to a stockholder that is merely derivative of the corporation's injury will not give that stockholder a right to bring an independent cause of action." *White*, 521 F. App'x at 428 (citation omitted). To determine whether a party is the real party in interest, courts look to "whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief." *White*, 521 F. App'x at 428 (quoting *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994)). *See also Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 730 (6th Cir. 2016).

Here, federal law governs Plaintiff's claims, but his Complaint does not cite to any federal statutory authority permitting him to maintain the suit individually in his name, rather than in the name of his corporations. And Plaintiff's explanation of his damages underscores the derivative nature of his claims. For example, Plaintiff states that the revocation of AI Adventures' CUA "severely impacted his business," which in turn impacted his livelihood. (Compl., ECF No. 1, PageID.2, ¶ 15.) Ultimately, losses for Plaintiff's businesses meant losses for Plaintiff, so Plaintiff's injury solely derives from injuries to his corporations, and he is not the real party in interest. *See, e.g., Williams v. City of Detroit*, No. 16-14112, 2019 WL 2410719, at *5 (E.D. Mich. June 7, 2019) (LLC member not real party in interest where injury was derivative from LLC's injury); *Four Fibers, LLC v. KEPS Technologies, Inc.*, No. 18-13867, 2022 WL 1444438, at *4 (E.D. Mich. May 6, 2022) (sole member of LLC not real party in interest for breach of contract claim where he signed contract in a representative capacity for the LLC and his claims sought redress for injuries to his corporation).

Significantly, in the Sixth Circuit, corporations may only appear in federal court through an attorney. *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) (citing *Ginger*

*v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970).  *See also Weng v. Nat'l Science Found.*, No. 1:22-cv-998, 2023 WL 3579357, at *1 n.1 (W.D. Mich. May 22, 2023) (Beckering, J.) (court struck *pro se* plaintiff's complaint and amended complaint because he could not legally represent corporate plaintiff in federal court and because no attorney had appeared on behalf of the corporation). Plaintiff's corporations, who are the real parties in interest, would therefore need to retain counsel before participating in this matter.

**II.     The Court should dismiss each of Plaintiff's individual causes of action.**

Even if the Court determines that Plaintiff has standing to sue and is the real party in interest, the claims he asserts still fail for a multitude of reasons, set forth below.

**A.     The Court lacks subject-matter jurisdiction over Plaintiff's APA claims because the Park Service's challenged actions are committed to agency discretion by law.**

***1.     The United States enjoys sovereign immunity.***

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' "  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  *See also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992).  The Sixth Circuit has reaffirmed this strict and narrow view of sovereign immunity: "[t]he United States can be sued only when it has expressly given its consent to be sued . . . . The waiver must be express, clear and unequivocal."  *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) (internal quotation and citations omitted).  In addition, "the language of any waiver of sovereign immunity is strictly construed in favor of the United States."  *Id.*

If the United States has not waived its sovereign immunity over a claim, then the court lacks jurisdiction to hear it.  *See, e.g., Clay v. United States*, 199 F.3d 876, 879 (6th Cir. 1999); *see also Mitchell*, 445 U.S. at 538.  Sovereign immunity extends to United States agencies, such as the

Park Service. *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). A plaintiff bears the burden of identifying an applicable waiver of sovereign immunity. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000).

### 2. The APA does not waive sovereign immunity for the Park Service's actions here, which are committed to agency discretion by law.

The Complaint seeks to challenge the revocation of AI Adventures' and PR Adventure's CUAs at Apostle Islands and Pictured Rocks, respectively, as arbitrary, capricious, and contrary to law under the APA.[4] (Compl., ECF No. 1, PageID.2, 4-5, 7, ¶ 12, 18.) The APA does contain a limited waiver of sovereign immunity. 5 U.S.C. § 702. However, the waiver does not apply here, where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The Supreme Court has explained that judicial review of agency action "is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). *See also Citizens*

---

[4] The Complaint does not appear to raise an APA challenge to the Park Service's denial of Paddle Ride's application for a CUA. (*See* Compl., ECF No. 1, PageID.7.) Regardless, any such claim would be subject to dismissal. The APA provides for review of agency action, but only if the action is final. 5 U.S.C. §§ 702, 704. An administrative action is final if it marks the consummation of the agency's decision-making process and it determines "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178-79 (1997) (quotation and citation omitted). Final agency action must exist at the time a plaintiff files suit. *See Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (all agency action that is not final is not ripe for review); *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 814 (8th Cir. 2006) (ripeness is "determined at the time [a] lawsuit [i]s filed."). Here, at the time Plaintiff filed suit on January 29, 2024, there was no final agency action, because Plaintiff appealed the Park Service's denial in writing on January 22 and 28, 2024, and the appeal was not denied until March 11, 2024. (Simmons Decl. ¶ 16, Ex. 10.) *See, e.g. Hanif v. Dep't of Homeland Security*, 472 F. Supp. 2d 914, 921 (E.D. Mich. 2007) ("where an optional appeal has been taken, the pending appeal renders the decision non-final.") (quotation and citation omitted). Consequently, as to the denial of Paddle Ride's CUA application, Plaintiff has failed to state a valid cause of action. *Jama v. Dep't of Homeland Security*, 760 F.3d 490, 494 n.4 (6th Cir. 2014) (APA's final agency action requirement is not jurisdictional).

*to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (Section 701(a)(2) "is a very narrow exception . . . applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.") (citation omitted).  Thus, the starting point of a § 701(a)(2) analysis is the statute Plaintiff alleges was violated.  Here Plaintiff does not specify the statute that he believes the Park Service violated.  The only citation in the Complaint to Park Service statutes or regulations is to 36 C.F.R. §§ 1.6(g) and 5.3.  Neither of these provisions address revocations of CUAs.

Regardless, the statutory and regulatory scheme governing CUAs affords the Park Service significant discretion regarding the revocation of CUAs.  For example, 54 U.S.C. § 101925, which addresses CUAs, is completely silent on revocations.  Relevant regulations similarly lack meaningful standards by which to judge CUA revocations.  36 C.F.R. § 1.6 does not provide specific criteria that the Park Service must consider or follow when revoking a CUA.  It only states that "[v]iolating a term or condition of a permit issued pursuant to this section *may* [] result in the suspension or revocation of the permit by the superintendent." (emphasis added).  The use of the word "may" indicates that even the decision whether to suspend or revoke a permit following a CUA violation is left to the superintendent's discretion.

The CUA Suspension, Restriction, Revocation, and Application Denial Policies in place at Apostle Islands and Pictured Rocks provide further support for the discretionary nature of CUA revocation decisions.  Both policies state: "Authority to terminate or revoke a permit is provided for via CUA . . . provision #9", which in turn states that "[t]his authorization may be terminated upon breach of any of the conditions herein *or at the discretion of the park area Superintendent*." (Simmons Decl. ¶¶ 6-7, Exs. 3-4 (emphasis added).)  Each policy further states that if a CUA Holder "commits a violation" as defined in the policy, its CUA may be suspended, restricted, or

revoked, and "[t]he Superintendent will determine the appropriate administrative action regarding the violation based on the totality of the circumstances." (*Id.*)  Lastly, each policy includes the following statement in its opening paragraph, which gives the Superintendent wide latitude over revocation decisions:

> The Superintendent, *at his or her discretion*, may take actions other than those identified and retains the authority to immediately suspend, restrict, or revoke a CUA or deny a future CUA application for reasons not covered in this policy memorandum.

(*Id.*) (emphasis added.)  Taken together, it is clear from the statutes, regulations, and policies governing the Park Service that the revocation of CUAs at Apostle Islands and Pictured Rocks is left to the Park Service's discretion.

The Sixth Circuit's analysis in *Barrios Garcia v. U.S. Dep't of Homeland Security* is instructive.  25 F.4th 430, 445-50 (6th Cir. 2022).  There, the Court looked to the statute at issue to determine "whether 'no judicially manageable standards are available for judging how and when [the Department of Homeland Security ("DHS") Secretary] should exercise its discretion' to issue work authorizations to Plaintiffs." *Id.* at 447 (quoting *Chaney*, 470 U.S. at 830.)  The Sixth Circuit held that DHS's actions were not committed to agency discretion by law because the statute at issue stated: "[T]he DHS Secretary may grant work authorization to any [noncitizen] who has a pending, bona fide application for nonimmigrant status . . ." and the words "pending" and "bona fide" provided the court with "meaningful standards that steer judicial review of discretionary agency decisions." *Id.* at 437, 447.  The Court contrasted this with a hypothetical provision—"the DHS Secretary may grant work authorization to noncitizens"—which the Court noted would be "standardless." *Id.* at 447.

In its analysis, the Sixth Circuit compared the language in the statute to the language the Supreme Court considered in *Overton Park* and *Chaney*.  In *Overton Park*, the Supreme Court

considered a statute that barred use of public parkland for highways unless "no feasible and prudent alternative" exists and found that the words "feasible" and "prudent" supplied meaningful standards for judicial review, rendering the exception in § 701(a)(2) inapplicable.  *Id.* (citing *Overton Park*, 401 U.S. at 411-13.)  In *Chaney*, the Supreme Court determined that the Food and Drug Administration ("FDA")'s decision not to take certain enforcement actions was not judicially reviewable under the APA because the FDA had complete discretion over those actions.  *Id.* (citing *Chaney*, 470 U.S. at 835.)  There, the relevant statute provided only that "[t]he [FDA] Secretary is *authorized* to conduct examinations and investigations" without supplying any standards that governed the timing or nature of the investigations.  *Id.* (quoting *Chaney*, 470 U.S. at 835.)

The statutes, regulations, and policies at issue in this case are similar to the statute at issue in *Chaney* and distinguishable from the statutes at issue in *Barrios Garcia* and *Overton Park*. Section 101925 of the 1998 Act provides no guidance regarding CUA revocations.  36 C.F.R. § 1.6 also is devoid of standards—it just lists one circumstance that might result in the revocation of a CUA.  And the applicable park policies state that the Superintendent may "immediately suspend, restrict, or revoke a CUA" for reasons not covered in the policy and "at his or her discretion, may take actions other than those identified" in the policy.  (Simmons Decl. ¶¶ 6-7, Exs. 3-4.)  This is akin to the "standardless" hypothetical the Sixth Circuit posed in *Barrios Garcia*, which it viewed as not judicially reviewable.[5]  25 F.4th at 447.  Therefore, because the relevant statutes, regulations, and policies "are drawn in such broad terms that . . .  there is no law to apply," the exception in § 701(a)(2) for agency action committed to agency discretion by law applies and the Court should

---

[5] Counsel for the Park Service was unable to find any case directly addressing CUA revocations in the APA context—finding only cases that considered the issuance of special use permits, CUAs, and concession contracts, which are distinguishable because they rely on different statutory and regulatory provisions.

dismiss Plaintiff's APA claims for lack of subject-matter jurisdiction.[6] *Barrios Garcia,* 25 F.4th at 447 (quoting *Overton Park*, 401 U.S. at 410).

      **B.**    **Plaintiff's due process and equal protection claims fail for lack of subject-matter jurisdiction.**

The Complaint alleges that the Park Service violated Plaintiff's due process rights under 42 U.S.C. § 1983 and his equal protection rights under the Fourteenth Amendment.  (Compl., ECF No. 1, PageID.7-8.)  The Court should dismiss both claims under Rule 12(b)(1).

42 U.S.C. § 1983 does not apply to federal government actors performing federal duties—it only applies to actions taken under color of state law.  *Arabo v. Greektown Casino, LLC*, 553 F. App'x 492, 493 (6th Cir. 2014); *Majors v. City of Clarksville*, 113 F. App'x 659, 659 (6th Cir. 2004).  Action "under color of state law" means a "state actor" exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation omitted).  Thus, § 1983 does not provide the basis for a claim against the Park Service.  Likewise, the Fourteenth Amendment does not apply to the Park Service, a federal agency, because the Fourteenth Amendment applies only to those acting under state authority.  *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).  Consequently, Plaintiff's § 1983 due process claim and Fourteenth Amendment equal protection claim should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

The Complaint also references Fifth Amendment due process violations.  (Compl., ECF No. 1, PageID.3, ¶ 18.)  But Plaintiff failed to allege any jurisdictional basis for this claim.  Constitutional tort claims may not be brought against federal agencies, like the Park Service.  Such

---

[6] Additionally, to the extent Plaintiff seeks monetary damages under the APA, this Court lacks jurisdiction over his claim.  *See* 5 U.S.C. § 702 (permitting actions "seeking relief other than money damages"); *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 426 (6th Cir. 2016).

claims under the U.S. Constitution may only be pursued as individual capacity claims to the extent they are actionable under *Bivens*. *Meyer*, 510 U.S. at 477-78; *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991). Thus, even if Plaintiff had a viable constitutional claim, the Park Service is not a proper defendant. *Meyer*, 510 U.S. at 484-85; *Ashbrook v. Block*, 917 F.2d 918, 924 (6th Cir. 1990).

Any attempt to amend the Complaint to allege a *Bivens* claim would be futile, as the Supreme Court has greatly narrowed the scope of *Bivens* through its decisions in *Ziglar v. Abbasi*, 582 U.S. 120, 134-35 (2017) and *Egbert v. Boule*, 596 U.S. 482, 491 (2022). After *Egbert*, the Sixth Circuit recognized:

> *Bivens* claims are currently limited to three situations: 1) a Fourth Amendment claim against federal narcotics agents for an illegal seizure [*Bivens*], 2) a Fifth Amendment claim against a member of Congress for sex discrimination [*Davis v. Passman*, 442 U.S. 228 (1979)], and 3) an Eighth Amendment claim against prison officials for inadequate medical care [*Carlson v. Green*, 446 U.S. 14 (1980)].

*Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3 (6th Cir. Sept. 13, 2022). If a cause of action differs in any way from these three cases, it is new, and allowing it to proceed under *Bivens* is disfavored. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021). Here, Plaintiff's claims are markedly different from the cases above and involve completely different types of alleged conduct. He does not allege illegal seizure, sex discrimination, or inadequate medical care. Some of his claims arise from a different amendment—the Fourteenth Amendment. And even if the Complaint alleges a Fifth Amendment claim, the same amendment that was at issue in *Davis*, it does not arise from the type of conduct at issue in *Davis*—sex discrimination—and different officials are involved.

Further, special factors counsel hesitation in creating a *Bivens* remedy here. First, a *Bivens* remedy is not available if there are alternative, existing processes for protecting a constitutional

interest. *Egbert*, 596 U.S. at 493-94; *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014). Here, there is an alternative process protecting Plaintiff's interest—specifically, the Park Service's administrative appeals process—which counsels against expanding *Bivens* here. *See Egbert*, 596 U.S. at 493 (any one alternative remedy alone is "reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.") (quotation omitted). Second, before expanding *Bivens* to a new context, courts must consider the risk of intruding upon the authority of other branches. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). Expanding *Bivens* here would be a disruptive intrusion by the judiciary into how the Park Service operates, placing courts in the position of evaluating how the Park Service should manage commercial services within the National Park System. Consequently, special factors preclude a *Bivens* remedy. Because Plaintiff's claims would create a new *Bivens* cause of action, and special factors weigh against creating a new cause of action here, they fall outside the scope of what is permissible under *Bivens* and Plaintiff's constitutional claims should be dismissed with prejudice.

### C. Plaintiff's conspiracy claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim.

The Complaint alleges a conspiracy to deprive Plaintiff of his rights through "an organized effort against [his] business," and "[c]ollaboration between [Apostle Islands] and [Pictured Rocks] against Mr. Prysok's venture." (Compl., ECF No. 1, PageID.7-8.) In support of his conspiracy claims, Plaintiff only cites to 18 U.S.C. § 241. (*Id.* at PageID.8.) But Plaintiff is not entitled to relief under 18 U.S.C. § 241 because it is a criminal statute and does not provide for a private civil cause of action. *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)). Additionally, a civil conspiracy claim would fail under the intracorporate conspiracy doctrine, which bars conspiracy claims when all defendants are member of the same collective entity. *Jackson v. City of Cleveland*,

925 F.3d 793, 817 (6th Cir. 2019); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994).  As such, the Court should dismiss Plaintiff's conspiracy claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  And the dismissal should be with prejudice because Plaintiff cannot cure these defects.

> **D.**   **Plaintiff's breach of contract claim fails under Rule 12(b)(1) for lack of subject-matter jurisdiction and under 12(b)(6) for failure to state a claim.**

The Complaint's breach of contract claims also fail.  (Compl., ECF No. 1, PageID.7-8, ¶ 27.)  As stated above at Section II.A.1, the United States is entitled to sovereign immunity unless it expressly waives this immunity, and Plaintiff bears the burden of identifying an applicable waiver.  In his Complaint, Plaintiff does not identify a waiver of sovereign immunity for his contract claims.  Instead, the Complaint asserts, generally, that 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 3614(a) provide the basis for this Court's jurisdiction over his claims.  None of these statutes, however, waive the United States' sovereign immunity.

First, 28 U.S.C. § 1345 and 42 U.S.C. § 3614(a), on their face, do not apply to this suit.  28 U.S.C. § 1345 applies to suits where the United States is the plaintiff.  And 42 U.S.C. § 3614(a) is a provision of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*—it has no application here.

Second, 28 U.S.C. § 1331 does not waive the United States' sovereign immunity.  It provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  However, "Section 1331's general grant of federal question jurisdiction . . . does not by its own terms waive sovereign immunity and vest in district courts plenary jurisdiction over claims for money judgment against the United States." *Reed*, 146 F.3d at 397-98 (quotation and citation omitted).  It merely gives district courts jurisdiction to hear federal claims that are not otherwise barred.  *See Whittle v. United States*, 7

F.3d 1259, 1262 (6th Cir. 1993).  For this reason, the Court should dismiss Plaintiff's contract claim under Rule 12(b)(1) for lack of subject-matter jurisdiction.[7]

Plaintiff's contract claims are also subject to dismissal under Rule 12(b)(6) for failure to state a claim.  To state a claim for breach of contract, a party must allege: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach."  *San Carlos Irr. and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).  But the Complaint does not contain any allegations regarding the Park Service's duties arising out of the CUAs or how the Park Service breached those duties. Without these allegations, Plaintiff fails to state a breach of contract claim.

### E.    Plaintiff's claims for violations and unequal application of federal regulations should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction and under 12(b)(6) for failure to state a claim.

Plaintiff alleges that, in violation and unequal application of federal regulations, the Park Service favored other commercial services providers over Paddle Ride during the application process for the 2024/2025 kayak season at Apostle Islands.  (Compl., ECF No. 1, PageID.6-8, ¶ 21.)  However, like Plaintiff's breach of contract claim, these claims should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff has not identified a valid waiver of sovereign immunity.  *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007). Additionally, these claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim.

---

[7] The Tucker Act contains a limited waiver of sovereign immunity, conferring jurisdiction upon the United States Court of Federal Claims for "any claim against the United States" based on "any express or implied contract with the United States[.]"  28 U.S.C. § 1491(a)(1).  The Little Tucker Act grants United States District Courts with concurrent jurisdiction over such claims when they are under $10,000.00.  28 U.S.C. §§ 1346(a)(2), 1491(a)(1).  Here, Plaintiff seeks $3.8 million in damages, so even if Plaintiff amended his claim to assert a contract claim under the Tucker Act, this Court lacks jurisdiction to hear it because jurisdiction over such claims is exclusively vested in the Court of Federal Claims.  *See A.E. Finley & Assocs., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990).

The Complaint does not identify, beyond a general reference to "Title 5 of the code of conduct for Government employees," which regulations were allegedly violated or unequally applied. (Compl., ECF No. 1, PageID.6, ¶ 21.)  This, at a minimum, is required to support a claim regarding regulatory violations.

## CONCLUSION

For the foregoing reasons, the Park Service respectfully requests that this Court dismiss the Complaint.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: June 10, 2024

/s/ Laura Babinsky
LAURA BABINSKY (P85670)
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
Laura.Babinsky@usdoj.gov